UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMNIPOINT COMMUNICATIONS, INC.,
OMNIPOINT NY MTA LICENSE, LLC,
and T-MOBILE LICENSE LLC,**

Plaintiffs,

-against-

**THE TOWN OF RAMAPO,** THE TOWN
OF RAMAPO PLANNING BOARD,
PLANNING BOARD CHAIRMAN
SYLVAIN KLEIN, BRACHA GOBIOFF,
BRENDEL LOGAN, REV. WALTER
BRIGHTMAN, JR., JOHN BRUNSON,
RICHARD STONE, DORA GREENE, in
their official capacities, constituting the
Town Planning Board, THE TOWN OF
RAMAPO TOWN BOARD and LIBORIO
DERARIO in his official capacity as
Director of Building Administration and
Code Enforcement,

Defendants.

**FIRST AMENDED COMPLAINT**

**08 CV. 2419 (SCR)
ECF CASE**

---

## COMPLAINT

Plaintiffs, Omnipoint Communications, Inc., Omnipoint NY MTA License, LLC, and T-Mobile License LLC (hereinafter collectively referred to as the "plaintiff"), by their undersigned counsel, Snyder & Snyder, LLP, complaining of defendants, do allege as follows:

## PRELIMINARY STATEMENT

1.      This action is brought under the federal Telecommunications Act of 1996. Plaintiff seeks to declare unlawful the unreasonable delay and

effective denial of plaintiff's special permit and site development plan application (the "Application") to install a wireless telecommunications facility (the "Facility").

2.  The Facility consists of a one hundred (100') foot monopole, using stealth technology designed to resemble a tree, with six (6) small panel antennas camouflaged with tree branches mounted thereon, together with related equipment cabinets at the base thereof, located at an Orange and Rockland Utilities, Inc. ("O&R") gas substation on Eckerson Lane, Spring Valley, Town of Ramapo, New York (the "Site").

3.  Plaintiff's application for the Facility was filed with defendant Planning Board more than 22 months ago, on April 17, 2006, and to date, no decision has been rendered regarding same.  Instead, in an effort to avoid making a decision on the Application, defendants have subjected plaintiff to a series of unreasonable requests for irrelevant and duplicative information and an unending quest for alternative sites and technologies.

4.  Plaintiff is licensed by the Federal Communications Commission (the "FCC") to provide personal communication services throughout New York, including the Town of Ramapo.

5.  Defendants have unreasonably delayed plaintiff's Application for the Facility over the course of more than 22 months through various delay

2

tactics, designed to keep plaintiff tied up in the hearing process, and thus resulting in the effective denial of plaintiff's Application.

6.    The actions complained of constitute a denial of the rights secured to plaintiff under the federal Telecommunications Act of 1996 (Public Law 104-104, 110 Stat. 56), and Article 78 of the New York State Code of Civil Practice Law and Rules.

7.    Plaintiff seeks permanent injunctive relief and a writ of mandamus compelling defendants to immediately issue all permits and approvals required by the Town of Ramapo for plaintiff to install the Facility that is the subject of this action.

## JURISDICTION AND VENUE

8.    This action is brought under 47 U.S.C. §332(c)(7)(B)(v), which authorizes expedited judicial review of actions brought under §332(c)(7)(B)(v) of the Telecommunications Act of 1996 (the "TCA").

9.    Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1343 and §1331 because this is a civil action that presents federal questions arising under the TCA. This Court has supplemental jurisdiction over any and all New York State Law claims pursuant to 28 U.S.C. §1367.

10.    Venue is proper in this district under the provisions of 28 U.S.C. §1391(a).

3

## THE PARTIES

11.  Plaintiff, Omnipoint Communications, Inc. is a wholly owned subsidiary of T-Mobile USA, Inc. Both Omnipoint Communications, Inc. and T-Mobile USA, Inc. are Delaware corporations with their principal places of business in Bellevue, WA. Omnipoint Communications, Inc. has offices located at 4 Sylvan Way, Parsippany, New Jersey 07054. Both Omnipoint Communications, Inc. and T-Mobile USA, Inc. are duly authorized to conduct business in the State of New York.

12.  Plaintiff, Omnipoint NY MTA License, LLC, a wholly owned subsidiary of Omnipoint Communications, Inc., is a Delaware limited liability company with its principal place of business in Bellevue, WA.

13.  Plaintiff, T-Mobile License LLC is a wholly owned subsidiary of T-Mobile USA, Inc. T-Mobile License LLC is a Delaware limited liability company with its principal place of business in Bellevue, WA.

14.  Omnipoint Communications, Inc. constructs, maintains and operates personal wireless service facilities and, pursuant to FCC PCS licenses held by Omnipoint NY MTA License, LLC and T-Mobile License LLC, provides wireless services in the New York metropolitan trading area. Plaintiff markets wireless services to and is known to its customers under the national entity brand name "T-Mobile." T-Mobile USA, Inc. operates a national wireless network.

4

15. Plaintiff provides a public utility service known as "commercial mobile radio service" (also referred to as "personal wireless service"), as those terms are defined under 47 U.S.C. §332(d)(1) and 47 U.S.C. §332(c)(7)(C)(i).

16. Plaintiff has been authorized by the FCC to construct and operate a digital, mobile radio system in various parts of the United States, including the State of New York, and the Town of Ramapo.

17. Defendant, Town of Ramapo Planning Board is an administrative body authorized by the laws of the State of New York and the Zoning Code of the Town of Ramapo, to *inter alia*, grant a special permit and site plan approval for the type of installation proposed by plaintiff.

18. Defendants, Town of Ramapo and the Town of Ramapo Town Board, respectively, are a municipal corporation and its governing body, created under the laws of the State of New York, and each having an address at 237 Route 59, Suffern, New York 10901. The Town Board empowered the Planning Board to grant a special permit and site plan approval for the construction and installation of antennas and related telecommunications facilities, such as those proposed by plaintiff.

19. Defendant, Liborio Derario, is the Town of Ramapo Director of Building Administration and Code Enforcement. The Director of Building Administration and Code Enforcement is charged with the duty of issuing building permits.

## FACTS COMMON TO ALL COUNTS

20.    Plaintiff is authorized by the FCC to construct and operate a mobile radio service using personal communications services ("PCS Service"). PCS Service competes with both traditional landline telephone services, and other mobile communication providers. Plaintiff's customers communicate using handsets that rely on a network of wireless base station facilities, or cell sites (comprised of antennas, equipment cabinets and related equipment), constructed and operated by plaintiff.

21.    The provision of PCS Service is only possible through a carefully designed network of cell sites, whose locations depend on natural and manmade features in the environment. Only through careful network siting is it possible to establish a seamless and reliable communications grid.

22.    To provide the service plaintiff is licensed to provide, its network must be capable of "handing off" radio signals to other wireless facilities in plaintiff's system as a mobile customer moves across an area.

23.    Where a gap in service exists, as it does in the Town of Ramapo, plaintiff's customers, who may include the traveling public, as well as police, fire and emergency response agencies are unable to initiate, receive or maintain calls.

24.     In the Town of Ramapo, plaintiff's customers experience a significant gap in wireless services. Plaintiff has been diligently trying to fill this gap in service. Plaintiff conducted studies to identify new antenna sites that would close this gap.

25.     Consistent with the foregoing, and prompted by a need to close an existing significant gap in service, plaintiff confirmed that collocation and use of existing structures was not feasible and identified the Site as the most appropriate location to construct the Facility since it is currently utilized as a public utility gas substation.

## THE APPLICATION

26.     On April 17, 2006, plaintiff filed an application (the "Application") for special permit and site development plan approval with the Planning Board, as required by the Town of Ramapo Zoning Code for the construction of the Facility.

27.     The Facility also required the issuance of four (4) setback variances that were granted by the Town of Ramapo Zoning Board of Appeals on April 12, 2007.

28.     In granting the necessary setback variances, the Zoning Board of Appeals found that: (1) "an undesirable change will not be produced in the character of the neighborhood nor a detriment to nearby properties will be created by the granting of the area variances;" and (2) "the

proposed variance will not have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district."

29.   The Application demonstrated that the Facility met the requirements of the Town of Ramapo Zoning Code and the Town of Ramapo Planning Board Site Development Plan Rules and Regulations for site plan approval, as required to install the Facility at the Site.

30.   The Facility complies with the height requirements of the Town of Ramapo Zoning Code.

31.   Plaintiff appeared at Planning Board public hearings on July 11, 2006, September 12, 2006, October 17, 2006, November 27, 2007, December 11, 2007, January 8, 2008 and February 19, 2008, technical review meetings on June 7, 2006, October 12, 2006, July 18, 2007, and October 10, 2007, and Zoning Board of Appeals public hearings on January 4, 2007, February 8, 2007, March 1, 2007, March 15, 2007 and April 12, 2007.

32.   During the public hearings, numerous residents spoke in general terms against the Facility. These expressions of concern were based primarily on perceived fears of adverse health effects from radio frequency emissions, and generalized concerns regarding aesthetics and property values.

33.   The Town Board itself has evidenced hostility toward wireless facilities. Indeed on March 30, 2005, the Town Board enacted and then

extended a moratorium ("Moratorium") on wireless facilities. The Moratorium was in effect for nine (9) months. The stated purpose of the Moratorium was to enact changes to the Town's zoning and land use procedure for wireless facilities.

34.    During the pendency of the Moratorium, plaintiff applied for and the defendant Town Board denied plaintiff's application for a waiver from the terms of the Moratorium.

35.    The Moratorium expired more than two years ago, in January 2006, and no changes to the Town Zoning Code have even been proposed for wireless facilities.

36.    The Application establishes that the Facility would have no significant adverse environmental, aesthetic or other impacts on the surrounding community.

37.    In connection with the Application, on October 17, 2006, defendant Planning Board adopted a negative declaration pursuant to the New York State Environmental Quality Review Act finding that the Facility will not have a significant adverse impact on the environment.

38.    In support of the negative declaration, the Planning Board found that: (1) "the applicant has selected a site that is a current utility site which is well screened from the surrounding neighborhood;" (2) "the visual analysis shows that the location will be minimally noticed during the leaf on seasons;" (3) "the evergreen antenna will help mitigate visual

impacts for leaf off times;" and (4) "this site provides the best option for closing the coverage gap."

39.    The Town's planning consultant, John Lange, F. P. Clark Associates Inc. ("Town Planner"), confirmed the Facility's lack of adverse impacts in a memorandum dated June 5, 2006, which stated that: (1) the Facility "is reasonably separated from the surrounding residences"; (2) that the visual "impacts to the sites depicted are not severe"; and (3) "the physical impact of the proposed action will be negligible as the wireless equipment will be located on an existing utility site."

40.    In a June 27, 2007 memorandum the Town Planner also advised that "[s]ince the Zoning Board of Appeals has granted the variances required, and since the height of the tower has been reduced to the maximum allowable height and since all of the other concerns have been mitigated, this is ready for final site plan approval."

41.    Nevertheless, for a period of six (6) months, from May 2007 to November 2007, the Planning Board, without reason, refused to place the Application on the Planning Board's agenda for a continued public hearing.

42.    The application submissions demonstrated that the Facility is necessary to remedy a significant gap in plaintiff's reliable service in the vicinity of the Site.

43.    The Town of Ramapo Zoning Code requires an applicant for a wireless communications facility to demonstrate that it is not feasible to locate the Facility on an existing site on the Town's Existing Facilities Inventory.

44.    The application submissions demonstrated that it is not feasible to locate the Facility on an existing site on the Town's Existing Facilities Inventory.

45.    The Town of Ramapo Zoning Code requires that where location on a site with existing facilities is not possible, such facility shall be located on a site with existing commercial or nonresidential uses.

46.    In compliance with the Town of Ramapo Zoning Code, the Facility is proposed to be located on a site that is currently used as a public utility gas substation, a nonresidential use.

47.    Over the course of the Planning Board's review, the Planning Board required plaintiff to review the feasibility of locating the facility at seven alternative locations, including a location at the Hillcrest Fire Department.

48.    Plaintiff submitted documentary evidence that each location was not a feasible alternative to the proposed Facility at the Site.

49.    The Town Planner confirmed that plaintiff "provided sufficient information on alternative locations to support their contention that the proposed site is one that meets their coverage requirements with the

least impact upon the environment" in a memorandum to the Deputy Town Attorney for Planning and Zoning, dated October 13, 2006.

50.  In addition, the Town's radio frequency consultant, RCC Consultants, Inc. ("RCC"), confirmed that the Hillcrest Fire Department property is not a feasible alternative to the Facility at the Site.

51.  Faced with the reality that plaintiff had demonstrated, and its own consultants confirmed, that there were no feasible alternative locations to the Facility at the Site, the Planning Board then raised the new issue of whether the use of a distributed antenna system ("DAS") was a feasible alternative to the proposed Facility at the Site.

52.  The issue of DAS was raised for the first time at the November 27, 2007 public hearing despite the fact that the Application had been filed more than 19 months prior.

53.  In response to the Planning Board's inquiry, at the November 27, 2007, Rich Conroy, President of PierCon Solutions, plaintiff's radio frequency consultant testified that DAS is not a feasible alternative to the proposed Facility at the Site.

54.  Local governments are preempted from regulating the business activities of wireless providers. Local governments cannot restrict federally licensed wireless service providers from exercising their federal wireless licenses by requiring FCC licensees to execute franchise agreements, pole attachment agreements, agreements with

12

third party Outdoor DAS providers and accept limitations on frequency emissions as conditions precedent to the exercise of federal licenses. The Planning Board exceeded its jurisdiction.

55.    Nevertheless, at its meeting on November 27, 2007, the Planning Board refused to close the public hearing and directed its staff to retain a consultant to review the feasibility of utilizing DAS as an alternative to the proposed Facility.

56.    Nearly two months later, the Town's radio frequency consultant, RCC concluded "that an outdoor DAS solution for the Town of Ramapo is an impractical and unfeasible solution for the application under consideration."

57.    The Application demonstrates that the Facility will not have an adverse impact on property values in the surrounding area.

58.    There is no substantial evidence in the record that the Facility will have an adverse impact on property values.

59.    By letter dated December 4, 2007, plaintiff submitted to the Planning Board a comparative sales analysis prepared by Edward J. Ferrarone, MAI, President of Lane Appraisals, Inc., which concludes that the "Facility will not result in the diminution of property values or reduce the marketability of properties in the immediate area."

60.    Nevertheless, at the last Planning Board public hearing on February 18, 2008, the Planning Board refused to close the public hearing and

instead adjourned the public hearing to March 11, 2007 to allow the neighbors to obtain a property value appraisal.

61.    The neighbors had more than ample time to retain their own appraiser during the 22 month review of the Application and had not done so.

62.    At the last Planning Board meeting on February 18, 2008, the Planning Board made a motion to approve plaintiff's application for a special permit.

63.    The motion to approve the Application failed with two (2) Planning Board members voting in favor of the motion and four (4) Planning Board members voting against the motion.

64.    The Planning Board's failure to adopt the motion to approve the Application is deemed a denial of the Application.

65.    The Planning Board was then unable to formulate a reason to deny the Application.

66.    It was apparent from the Planning Board's failure to pass the motion to approve by a vote of two (2) in favor of the motion and four (4) against the motion, that the Planning Board has no intention of approving the Application.

67.    Over the course of the 22 month review of the Application, each time plaintiff resolved an issue raised by the Planning Board or the neighbors, the Planning Board continuously raised new irrelevant issues and requested additional information in an effort to

unreasonably delay the application and avoid making a decision in the face of strident community opposition.

68.    Taken as a whole, the record before the Planning Board demonstrates that plaintiff has met the requirements for a special permit and site plan approval.

69.    There is no evidence in the record before the Planning Board that the Facility would have an adverse impact on the community.

70.    The administrative record demonstrates that plaintiff has a significant gap in coverage and that the Facility at the Site is the least intrusive means of remedying such gap.

71.    The failure by the Planning Board to close the public hearing and render a favorable decision on the Application, despite the overwhelming evidence in the record supporting such action, as well as the continuous requests by defendants and their consultants for irrelevant information and the unending search for alternatives, constitutes an unreasonable delay of the Application, tantamount to a denial of same, in violation of §332(c) of the federal TCA.

72.    No matter what the plaintiff does in this case, the Planning Board will never deem it sufficient to approve the Application.

73.    A special permit is a use permitted by right provided the application meets all of the conditions of the zoning code.

74.     The administrative record is devoid of any evidence; let alone substantial evidence, sufficient to deny the Application based on a condition contained in the Zoning Code.

75.     There is no way to measure the loss of market share and customer goodwill the plaintiff continues to suffer as a result of the gaps in coverage which continue to exist in the Town and surrounding areas.

76.     Since there is no less intrusive means of remedying plaintiff's significant gap in coverage, any denial of the Application is a prohibition of service.

77.     The Planning Board made evident, by its failure to adopt the motion to approve the Application, that it does not intend to approve the Application. Therefore, any further proceedings before the Planning Board would be futile.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

78.     Plaintiff repeats and realleges paragraphs 1 through 77 of the Complaint as though set forth in full herein.

79.     Section 332(c)(7)(B)(ii) of the TCA, provides that "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly

16

filed with such government or instrumentality, taking into account the nature and scope of such request."

80.  The failure of the defendant Planning Board to close the public hearing and render a decision regarding the Application after a 22 month review, coupled with the nine (9) month Moratorium and Town Board denial of plaintiff's waiver application, and the repeated requests for irrelevant information, constitute an unreasonable delay of the Application, in violation of §332(c)(7)(B)(ii) of the TCA.

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

81.  Plaintiff repeats and realleges paragraphs 1 through 80 of the Complaint as though set forth in full herein.

82.  Section 332(c)(7)(B)(iii) of the TCA, provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

83.  By unreasonably delaying the Application, defendants have effectively denied the Application.

84.  The denial and effective denial of the Application is not based on substantial evidence and is violative of the rights secured to plaintiff under 47 U.S.C. §332(c)(7)(B)(iii).

85.    As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including site plan approval and a building permit for the Facility.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

86.    Plaintiff repeats and realleges paragraphs 1 through 85 of the Complaint as though set forth in full herein.

87.    Section 332(c)(7)(B)(i)(II) of the TCA, provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof -- . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

88.    By unreasonably delaying and effectively denying the Application, defendants have effectively prohibited the provision of personal wireless service in violation of Section 332(c)(7)(B)(i)(II), since plaintiff has demonstrated a significant gap in service and there is no less intrusive means of remedying such gap.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

89.    Plaintiff repeats and realleges paragraphs 1 through 88 of the Complaint as though set forth in full herein.

90.    Section 332(c)(7)(B)(iv) of the TCA provides that: "No State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).The Planning Board's unreasonably delay and effective denial of the Application was based on unsubstantiated generalized community concerns regarding perceived health effects from radio frequency emissions from the Facility, in violation of §332(c)(7)(B)(iv) of the TCA.

91.    As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including a special permit, site development plan approval and a building permit.

## AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS UNDER NEW YORK LAW

92.    Plaintiff repeats and realleges paragraphs 1 through 91 of the Complaint as though set forth in full herein.

93.    There is substantial evidence in the written record before the defendants that supports the issuance of the requested special permit and site plan approval under the Town of Ramapo Zoning Code, and

the Town of Ramapo Planning Board Site Development Plan Rules and Regulations for site plan approval.

94.     The Planning Board's effective denial of plaintiff's application was arbitrary and capricious and in violation of the New York State Law and the Town of Ramapo Zoning Code.

95.     As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including site plan approval and a building permit.


**WHEREFORE**, the plaintiff respectfully demands judgment of this Court on all of its Claims for Relief and a judgment and order which:

(1)     declares unlawful defendant Planning Board's unreasonable delay and effective denial of plaintiff's application;

(2)     compels defendants and their agents to issue a special permit and site plan approval and any other zoning approvals required for plaintiff to construct operate and maintain the Facility; and

(3)     compels defendants and their agents to issue any other required approval and/or permits, including, but not limited to, a building permit

by the Building Inspector, to construct operate and maintain the Facility; and

(4)    grants plaintiff such other, further and different relief as the Court may deem just and proper.

_____
Robert D. Gaudioso (ID #RG 3829)
Snyder & Snyder, LLP
94 White Plains Road
Tarrytown, NY 10591
(914) 333-0700

Dated: March 31, 2008
      Tarrytown, New York 10591

Z:\SSDATA\WPDATA\SS3\RDG\voicestream\Ramapo\06-615\Litigation\Amended Complaint.doc