UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMNIPOINT COMMUNICATIONS, INC.,**
**OMNIPOINT NY MTA LICENSE, LLC,**
**and T-MOBILE LICENSE LLC,**

                      Plaintiffs,

           -against-

**THE TOWN OF RAMAPO,** THE TOWN OF
RAMAPO PLANNING BOARD, PLANNING
BOARD CHAIRMAN SYLVAIN KLEIN,
BRACHA GOBIOFF, BRENDEL LOGAN, REV.
WALTER BRIGHTMAN, JR., JOHN BRUNSON,
RICHARD STONE, DORA GREENE, in their
official capacities, constituting the Town Planning
Board, THE TOWN OF RAMAPO TOWN
BOARD and LIBORIO DERARIO in his official
capacity as Director of Building Administration and
Code Enforcement,

                   Defendants.

---

**08 CV. 2419 (SCR)**
ECF CASE

**AFFIDAVIT OF ROBERT
D. GAUDIOSO
IN SUPPORT OF
PLAINTIFFS' MOTION
FOR SUMMARY
JUDGMENT**

STATE OF NEW YORK        )
                        ) ss.:
COUNTY OF WESTCHESTER    )

        ROBERT D. GAUDIOSO, being duly sworn, deposes and says:

        1.     I am an attorney duly admitted to practice law in the State of

New York and am admitted to practice before this Court. I am a partner of the law

firm Snyder & Snyder LLP, attorneys for plaintiffs Omnipoint Communications,

Inc., Omnipoint NY MTA License, LLC, and T-Mobile License LLC (hereinafter

collectively referred to as the "plaintiff"). This affidavit is respectfully submitted in

support of plaintiff's motion for summary judgment for the relief requested in

Plaintiff's First Amended Complaint, a copy of which is annexed hereto and made a part hereof as Exhibit A, and Plaintiff's First Supplemental Complaint, a copy of which is annexed hereto and made a part hereof as Exhibit B.

2.     The undisputed facts of this case are based on the administrative Record ("R"), consisting of an 86 Exhibit ("Ex."), 683 page written administrative record that the parties have stipulated as being complete and accurate, and as set forth in plaintiff's accompanying Statement of Undisputed Facts in accordance with Local Rule 56.1 ("Rule 56.1 Statement").  The Record and Rule 56.1 Statement are incorporated by reference as if annexed to this affidavit.

## THE MORATORIUM

3.     On March 30, 2005, the Town of Ramapo ("Town") adopted a moratorium (the "Moratorium"), effective April 4, 2005, prohibiting the issuance of any building permit or final approval of a special permit and site development plan for a wireless communications services facility, pursuant to Section 376-1214 of the Town Zoning Code  ("Wireless Law"), for a period of 180 days. (R., Ex. 1 at pages 00001-00006).

4.     The stated purpose of the Moratorium was to allow the Town to commission a study "to determine the areas in the Town where facilities are needed and what properties could accommodate such facilities," and amend the Wireless Law accordingly. (R., Ex. 1 at pages 00001-00006).

5.     The Moratorium was extended for an additional period of 90 days on October 11, 2005. (R., Ex. 3 at pages 00010-00011).

6.    In accordance with Section 4 of the Moratorium, on October 31, 2005, plaintiff filed an application with the Town of Ramapo Town Board ("Town Board") requesting a waiver ("Waiver Application") from the terms of the Moratorium. (R., Ex. 2 at pages 00007-00009).

7.    On November 21, 2005, the Town Board referred the Waiver Application to the Town of Ramapo Planning Board ("Planning Board") for a recommendation.

8.    On November 29, 2005, defendant Planning Board, without legal justification, recommended to the Town Board that it deny plaintiff's application for a waiver from the Moratorium. (R., Ex. 5 at page 00033).

9.    In accordance with defendant Planning Board's recommendation, on December 14, 2005, the Town Board denied plaintiff's Waiver Application on the sole basis that the Moratorium would expire in the middle of January 2006. (R., Ex. 6 at page 00034).

10.    To the best of my knowledge, the "study" referred to in the Moratorium was never completed and the Town's Wireless Law was never amended as a result of the Moratorium. Therefore, the Moratorium served no legitimate purpose and was only intended to delay the deployment of wireless services within the Town.

3

## PLAINTIFF'S APPLICATION FOR A NEW WIRELESS FACILITY
## IN THE TOWN OF RAMAPO

11.    On April 17, 2006, plaintiff submitted to defendant Planning Board an application for special permit and site development plan approval to install a stealth wireless telecommunications facility (the "Facility"), which, as originally proposed, would consist of a 120 foot monopole, at an Orange and Rockland Utilities, Inc. ("O&R") public utility gas substation on Eckerson Lane, Spring Valley, Town of Ramapo, New York (the "Public Utility Site"). (R., Ex. 7 at pages 00035-00146-A).

12.    Pursuant to the Wireless Law, the Facility is expressly permitted at the Public Utility Site by special permit and site development plan approval by the Planning Board. (R., Ex. 86 at pages 00678-00683).

13.    The proposed Facility will be used to provide federally licensed wireless communication services. As currently proposed, the Facility will consist of a 100 foot monopole, designed using stealth technology to resemble a tree as requested by the Planning Board, with six (6) small panel antennas camouflaged with tree branches mounted thereon, together with related equipment cabinets at the base thereof. (R., Ex. 45(G) at page 00358a).

14.    Plaintiff is licensed by the Federal Communications Commission (the "FCC") to provide personal communication services throughout New York (the "State"), including the Town. Plaintiff's engineers confirmed that

4

there is a significant gap in the wireless services plaintiff is authorized to provide in the Town. (R., Ex. 7(G)(1) at pages 00065-00075; R., Ex. 24(B) at pages 00213-00226; and R., Ex. 45(F) at pages 00347-00358). No one has challenged this fact.

15.     A wireless facility must be capable of "handing off" communications to another adjacent wireless facility within plaintiff's wireless system.  Otherwise, gaps in cellular service will exist which prohibit a customer's ability to initiate or receive communications and/or communications will be "dropped" in these areas. Existing gaps in, and increasing demand by the public for wireless services requires the installation of additional wireless facilities by plaintiff across the State and specifically in and around the Town.   As confirmed by plaintiff's engineers, plaintiff's existing sites in and around the Town are unable to provide reliable levels of service in the area surrounding the Site. (R., Ex. 7(G)(1) at pages 00065-00075; R., Ex. 24(B) at pages 00213-00226; and R., Ex. 45(F) at pages 00347-00358).

16.     The special permit and site development plan application ("Application") included the required application forms, the required application fees, a Narrative Summary in support of the proposal, a Long Environmental Assessment Form with Visual EAF Addendum, and a full Site Plan depicting the Facility as a 120 foot monopole, as originally proposed.  The Narrative Summary included:  (i) a demonstration that the requirements of the Wireless Law were met; (ii) the affidavit of Raj Makhija, plaintiff's radio frequency ("RF") engineer, which included a technical demonstration that the Facility was necessary to remedy a

significant gap in service and that co-location on sites on the Existing Facilities Inventory was not a feasible alternative; (iii) a Visual Resource Evaluation, prepared by B&E Associates, LLC, which concluded that the Facility will not have an adverse aesthetic impact on the community; (iv) a report from Pinnacle Telecom Group, which confirmed that the Facility would comply with the applicable FCC regulations pertaining to RF emissions; (v) a copy of plaintiff's agreement with O&R, the owner of the Public Utility Site; and (vi) a copy of plaintiff's FCC license. (R., Ex. 7G at pages 00057-00132).

17.     The Application demonstrated that, with the exception of the need for variances subsequently granted by the Town Zoning Board of Appeals ("Zoning Board"), plaintiff met all requirements in the Wireless Law, the Town Zoning Code, and the Town Planning Board Site Development Plan Rules and Regulations for site plan approval, as required to install the Facility at the Public Utility Site. (Defendants' Failure to Deny Allegation #29 of Plaintiff's First Amended Complaint in Answer; R., Ex.7 at pages 00035-00146a; R., Ex. 18 at pages 00169-00193a; R., Ex. 24 at pages 00212-00226; R., Ex. 30 at pages 00234-00252; R., Ex. 32 at pages 00258-00305; R., Ex. 45 at pages 00336-00358a; R., Ex. 59 at pages 00376-00380; R., Ex. 63 at pages 00411-00426; R., Ex. 70 at pages 00459-00466; and R., Ex. 79 at pages 00582-00584).

18.     The Application submissions demonstrated that the Facility is necessary to remedy a significant gap in plaintiff's reliable service in the vicinity of

the Public Utility Site. (R., Ex. 7(G)(1) at pages 00065-00076; R., Ex.24(B) at pages 00213-00226; and R., Ex. 45(F) at pages 00347-00358).

19.    The Wireless Law requires an applicant for a wireless communications facility to demonstrate that it is not feasible to locate the facility on an existing site on the Town's Existing Facilities Inventory. (R., Ex. 86 (Item D) at page 00678).

20.    The Application submissions demonstrated that it is not feasible to locate the Facility on an existing site on the Town's Existing Facilities Inventory. (R. Ex. 7(I)(1) at pages 00065-76; R., Ex.18(C) at pages 00192-00193; R., Ex. 24(B) at pages 00213-00226).

21.    The Wireless Law requires that where location on a site with existing facilities is not possible, such facility shall be located on a site with existing commercial or nonresidential uses. (R., Ex. 86 (Item D) at pages 00678-00683).

22.    In compliance with the Wireless Law, the Facility is proposed to be located on a site that is currently used as a public utility gas substation, a nonresidential use.

23.    In addition, the Application establishes that the Facility would have no adverse environmental, aesthetic or other impacts on the surrounding community.

24.    In fact, in a memorandum to the Deputy Town Attorney for Planning and Zoning, dated June 5, 2006, from the Town's planning consultant, John Lange, F. P. Clark Associates Inc. ("Town Planner"), the Town Planner confirmed

7

that: (1) <u>the Facility "is reasonably separated from the surrounding residences"; (2)</u> <u>that the visual "impacts to the sites depicted are not severe"; and (3) "the physical</u> <u>impact of the proposed action will be negligible as the wireless equipment will be</u> <u>located on an existing utility site.</u>" (R., Ex. 16 at pages 00160-00167).

       25.    On June 7, 2006, plaintiff met with the Town Community Design Review Committee ("CDRC") to discuss the Application.

       26.    In response to the comments of the CDRC, by cover letter from Snyder & Snyder, LLP, dated June 26, 2006, plaintiff submitted: (1) a Drainage Report, signed and sealed by John Delano, P.E. of Badey & Watson, which established that there will be no impact on the existing drainage patterns at the Site; (2) coverage maps further demonstrating that it is not feasible to locate the Facility on a facility on the Town's Existing Facilities Inventory list; and (3) a revised site plan. (R., Ex. 18 at pages 00169-00193-A).

       27.    By cover letter to defendant Planning Board from Snyder & Snyder, LLP, dated July 7, 2006, plaintiff submitted the First Supplemental RF Affidavit of Raj Makhija, which included updated coverage maps demonstrating that plaintiff had a significant gap in reliable wireless coverage in the vicinity of the Site, that the Facility would remedy plaintiff's significant gap in coverage and that it was not feasible to locate the Facility on an existing facility on the Town's Existing Facilities Inventory to remedy plaintiff's significant gap in reliable service. (R., Ex. 24A at page 00212; R. Ex. 24B at pages 00213-00226).

28.    On July 11, 2006, almost 3 months after the Application was initially filed, plaintiff appeared for the first time before the Planning Board for a public hearing.

29.    At the July 11, 2006 public hearing, approximately eight residents spoke in general terms against the Facility on the basis of perceived fears of adverse health effects from RF emissions and generalized concerns regarding aesthetics and property values. (R., Ex. 27 at pages 00229-00231).

30.    No written evidence was submitted in opposition to the Facility at the July 11, 2006 meeting. (R., Ex. 27 at pages 00229-00231).

31.    At the July 11, 2006 public hearing, the Planning Board declared its intent to act as lead agency under the New York State Environmental Quality Review Act ("SEQRA"). (R., Ex. 27 at pages 00229-00231).

32.    In response to the comments of the Planning Board at the July 11, 2006 public hearing, by cover letter from Snyder & Snyder, LLP, dated August 24, 2006, plaintiff submitted: (1) the Second Supplemental RF Affidavit of Raj Makhija, which demonstrated that alternative locations suggested by defendant Planning Board and/or reviewed by plaintiff were not feasible alternative locations for the Facility to remedy Omnipoint's significant gap in coverage; and (2) pictures of existing wireless telecommunications towers camouflaged to resemble trees. (R., Ex. 30 at pages 00234-00252).

33.    At the request of the Town personnel at the CDRC on June 7, 2006, plaintiff re-designed the Facility as a "stealth" tree-pole in order to further

minimize any potential visual impacts. (R., Ex. 30A at pages 00234-00236; R., Ex. 31 at pages 00253-00257).

      34.    On September 12, 2006, plaintiff appeared before the Planning Board for a continued public hearing on the Application. (R., Ex. 31 at pages 00253-00257).

      35.    At the September 12, 2006 public hearing, Dan Collins, Chief Technical Officer for Pinnacle Telecom Group testified on behalf of plaintiff that the Facility will comply with the FCC's regulations regarding RF exposure. (R., Ex. 31 at pages 00253-00257).

      36.    Once again, approximately six residents spoke in general terms against the Facility on the basis of perceived fears of adverse health effects from RF emissions and generalized concerns regarding aesthetics and property values. (R., Ex. 31 at pages 00253-00257).

      37.    No written evidence was submitted to the record in opposition to the Facility at the September 12, 2006 public hearing. (R., Ex. 31 at pages 00253-00257).

      38.    At the conclusion of the September 12, 2006 public hearing, defendant Planning Board adjourned the public hearing and directed plaintiff to review alternative locations. (R., Ex. 31 at pages 00253-00257).

      39.    In response to the comments of the Planning Board at the September 12, 2006 meeting, by cover letter dated September 29, 2006, plaintiff submitted: (1) the Third Supplemental RF Affidavit of Raj Makhija, Omnipoint's RF

engineer which demonstrated that the existing approximately 75 foot O&R utility towers adjacent to the Site would need to be extended to 175 feet to remedy plaintiff's significant gap in reliable coverage in the vicinity of the Public Utility Site, and that the Summit Park Water Tank is not a feasible alterative to the Facility at the Public Utility Site because it would not provide sufficient coverage to remedy Omnipoint's significant gap in coverage; and (2) a letter from O&R confirming that it is not feasible to extend the existing O&R utility towers to 175 feet. (R., Ex. 32 at pages 00258-00305).

  40. Over the course of the Planning Board's review from July 2006 to October 2006, the Planning Board required plaintiff to review the feasibility of locating the facility at six alternative locations.

  41. Plaintiff submitted documentary evidence that each location was not a feasible alternative to the proposed Facility at the Public Utility Site.

  42. In a memorandum to the Deputy Town Attorney for Planning and Zoning, dated October 13, 2006, Town Planner Lange confirmed that plaintiff "provided sufficient information on alternative locations to support their contention that the proposed site is one that meets their coverage requirements with the least impact upon the environment." (R., Ex. 36 at pages 00309-00310).

  43. On October 17, 2006, the Planning Board held a continued public hearing on the Application. (R., Ex. 38 at pages 00313-00316).

44.    At the October 17, 2006 public hearing, the Town Planner stated that "Omnipoint had done intense research" and that "this proposed site would be most adequate." (R., Ex. 38 at pages 00313-00316).

45.    Once again, approximately eight residents spoke in general terms against the Facility on the basis of perceived fears of adverse health effects from RF emissions and generalized concerns regarding aesthetics and property values. (R., Ex. 38 at pages 00313-00316).

46.    No written evidence was submitted to the record in opposition to the Facility at the October 17, 2006 public hearing. (R., Ex. 38 at pages 00313-00316).

47.    On October 17, 2006, defendant Planning Board closed the public hearing and adopted a negative declaration pursuant to SEQRA finding that the Facility will not have a significant adverse impact on the environment. (R., Ex. 38 at pages 00313-00316; R., Ex. 37 at pages 00311-00312).

48.    In support of the negative declaration, the Planning Board found that: (1) "the applicant has selected a site that is a current utility site which is well screened from the surrounding neighborhood"; (2) "the visual analysis shows that the location will be minimally noticed during the leaf on seasons"; (3) "the evergreen antenna will help mitigate visual impacts for leaf off times"; (4) "this site provides the best option for closing the coverage gap"; and (5) "no other location could provide the coverage required with the exception of the existing O&R towers number 1 and 4, but each would have required altering the towers to increase their

height to one hundred seventy five feet, one hundred feet higher than their current level, an impractical solution." (R., Ex. 37 at pages 00311-00312).

49.    In addition, at the October 17, 2007 Planning Board meeting, the Planning Board voted to refer the application to the Zoning Board of Appeals for the necessary variances. (R., Ex. 38 at pages 00313-00316).

50.    On November 13, 2006, plaintiff filed a complete application with the Zoning Board requesting the following variances: (1) a 23.7 foot variance from the front yard setback requirement where a 200 foot setback is required and a 176.3 setback is proposed; (2) a 22 foot variance from the rear yard setback requirement where a 200 foot setback is required and a 178 foot setback is proposed; (3) a 96 foot variance from the side yard setback requirement where a 200 foot setback is required and a 96 foot setback is proposed; (4) a 53 foot setback from the total side setback requirement where a total setback of 400 feet is required and a 347 foot total setback is proposed; and (5) a 26 foot height variance where a maximum height of 100 feet is permitted and a height of 126 feet was proposed.

51.    Plaintiff appeared at the Zoning Board's public hearings on January 4, 2007, February 8, 2007, March 1, 2007, March 15, 2007 and April 12, 2007.

52.    During the course of the Zoning Board public hearings, numerous residents spoke in general terms against the Facility. Once again, these expressions of concern were based primarily on perceived fears of adverse health

effects from RF emissions, and generalized concerns regarding aesthetics and property values.

      53.     At the February 8, 2007 public hearing, the Town Supervisor, Christopher St. Lawrence, testified "as a private citizen" to oppose the Facility and urge plaintiff to pursue an alternative location at the Hillcrest Fire Department (also known as the Hillcrest Fire Company and hereinafter referred to as the "Fire Department"), a location also urged by an attorney representing the neighbors in opposition to the application.

      54.     Despite the fact that plaintiff had previously submitted documentary evidence to the Zoning Board that a new tower at three different locations in close proximity to the Fire Department property ("Fire Department Property") would not provide sufficient coverage to remedy plaintiff's significant gap in reliable coverage in the vicinity of the Public Utility Site, the Zoning Board requested that plaintiff review the feasibility of constructing a new tower at the Fire Department Property.

      55.     On March 15, 2007, plaintiff submitted to the Zoning Board a letter, signed by Herbert Silverstein, Commissioner of the Fire Department, confirming that the Fire Department was not interested in entering into a lease agreement with plaintiff to locate a wireless communications facility at the Fire Department Property; and therefore, the Fire Department Property was not a feasible alternative to the Facility at the Site. (R., Ex. 43 at page 00330).

56.     During the course of the Zoning Board public hearings, plaintiff submitted a comparative sales analysis prepared by Edward J. Ferrarone, MAI, President of Lane Appraisals, Inc., dated October 13, 2006, which concluded that "the installation, presence, and/or operation of the proposed Facility will not result in the diminution of property values or reduce the marketability of properties in the immediate area."

57.     In addition, in response to an "Impact Study", dated June 1, 2000, prepared by William R. Beckmann for the Town of Orangetown, in an entirely unrelated case, and submitted to the Zoning Board by the neighbors in opposition to the Facility, on April 12, 2007, plaintiff submitted to the Zoning Board, an additional letter from Mr. Ferrarone, dated March 30, 2007 demonstrating the inadequacies of the Beckmann "Impact Study."

58.     The inadequacies of the Beckmann Impact Study include the following: (i) it is seven years old; (ii) it was prepared in connection with a site in a different municipality; (iii) it is based on an analysis of high tension power lines; and (iv) it concludes that there is a lack of sufficient data to quantify a negative impact on property values.

59.     At the April 12, 2007 Zoning Board public hearing, plaintiff informed the Zoning Board that it would lower the height of the Facility from 126 feet to 100 feet to comply with the height requirements of the Zoning Code, thereby eliminating the need for a height variance and to further minimize any potential visual impacts.

60.    At the conclusion of the April 12, 2007 Zoning Board meeting, the Zoning Board granted the necessary setback variances finding, inter alia, that: (1) "an undesirable change will not be produced in the character of the neighborhood nor a detriment to nearby properties will be created by the granting of the area variances;" and (2) "the proposed variance will not have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district." (R., Ex. 44 at pages 00331-00335).

61.    On or about May 16, 2007, plaintiff re-filed its application for a special permit and final site development plan approval with the Planning Board.

62.    The May 16, 2007 Planning Board submission included an RF report prepared by Rich Conroy, President of PierCon Solutions, plaintiff's RF consultant, dated April 11, 2007 which further demonstrated that: (1) plaintiff has a significant gap in coverage in the vicinity of the Public Utility Site; (2) that the proposed Facility, at a height of 100 feet, is necessary to remedy that significant gap in coverage; and (3) that there are no feasible alternatives to the Facility at the Public Utility Site. (R., Ex. 45 at pages 00336-00358-A)

63.    In a memorandum to the Deputy Town Attorney for Planning and Zoning, dated June 27, 2007, the Town Planner advised that "[s]ince the Zoning Board of Appeals has granted the variances required, and since the height of the tower has been reduced to the maximum allowable height and **since all of the other concerns have been mitigated**, this is ready for final site plan approval" (emphasis added). (R., Ex. 50 at pages 00363-00364).

16

64.     Nevertheless, the Planning Board did not place the Application back on the Planning Board agenda for more than 6 months after plaintiff obtained the necessary variances.

65.     At the July 18, 2007 CDRC meeting, CDRC informed plaintiff that a neighboring property owner and the Town Supervisor's office claimed that they had recent discussions with the Fire Department and that the Fire Department was willing to lease space to plaintiff for the construction of a new tower.

66.     In light of the fact that plaintiff previously submitted a letter from the Fire Department indicating it would not enter into a lease with plaintiff, the CDRC advised that unless it receives something in writing from the Fire Department to the contrary, the Town will not consider the Fire Department as a possible alternative.

67.     At the July 18, 2007 meeting, CDRC stated that the Application would be placed on the next available Planning Board agenda, which might not be until September. (R., Ex. 51 at page 00365).

68.     The Application was not placed on the September 2007 Planning Board agenda.

69.     By letter dated August 17, 2007, plaintiff's counsel wrote to the Deputy Town Attorney for Planning and Zoning to confirm a discussion with the Planning Board's attorney in which the Planning Board attorney indicated that the Application would be on the Planning Board's October 16, 2007 agenda.

17

70. The Application was not placed on the October 16, 2007 Planning Board agenda.

71. On September 17, 2007, a month after plaintiff's letter confirming the next available public hearing date, Richard Ackerson, the Deputy Town Attorney for Planning and Zoning, called plaintiff's counsel to inform plaintiff that the Application would not be on the Planning Board's agenda for a public hearing until November 20, 2007, more than six months after the Application was re-filed with the Planning Board.

72. The next morning, September 18, 2007, Mr. Ackerson faxed to plaintiff's counsel, a letter from the Fire Department indicating that the Fire Department was now interested in entering into a lease agreement with plaintiff. This apparent change of heart on behalf of the Fire Department came more than six months after Fire Commissioner Silverstein's written acknowledgement that the Fire Department was not interested in a lease agreement with plaintiff.

73. On September 18, 2007, Mr. Ackerson contacted plaintiff's counsel to inform plaintiff that the Application would be on the CDRC's agenda on October 10, 2007 to discuss the new letter from the Fire Department.

74. On September 19, 2007 and September 27, 2007, plaintiff's representative Aaron Myl called the telephone number provided by the Fire Department and left messages requesting a return phone call.

75. When Mr. Myl's phone calls were not returned by the Fire Department, on or about October 1, 2007, plaintiff's representative faxed and sent by

18

overnight delivery, a letter to the Fire Department requesting that the Fire Department contact him and that if a response was not received by October 9, 2007, plaintiff would assume that the Fire Department was no longer interested in a lease with plaintiff. (R., Ex. 55 at pages 00369-00370).

76.    Plaintiff did not receive a response from the Fire Department by the October 9, 2007 deadline and therefore assumed that the Fire Department was not interested in a lease with plaintiff.

77.    Plaintiff appeared before the CDRC on October 10, 2007 and informed the CDRC that despite numerous attempts at contact with the Fire Department, plaintiff had not received a response and could only assume that the Fire Department was not interested in a lease agreement, consistent with its original position indicated seven months prior.

78.    In addition, at the October 10, 2007 CDRC meeting, plaintiff submitted written documentation from PierCon Solutions, its RF consultant, demonstrating that the Fire Department Property was not a feasible alternative as a tower in excess of 200 feet would be required and such a facility would provide two-thirds redundant coverage and create interference issues with the rest of plaintiff's network. (R., Ex. 56 at pages 00371-00373).

79.    By letter dated November 6, 2007, the Town's RF consultant, RCC Consultants, Inc. ("RCC"), confirmed that the Fire Department Property is not a feasible alternative to the Facility at the Site.

80.    The Planning Board finally agreed to hold a public hearing on the Application on November 27, 2007, more than six months after plaintiff re-filed the Application with the Planning Board.

81.    Despite that fact that a year earlier the Planning Board had adopted the negative declaration finding that the Facility will not have a significant adverse impact on the environment, the Planning Board expressed hostility towards the Application at the November 27, 2007 public hearing.

82.    At the November 27, 2007 public hearing a few members of the public made unsupported expressions of concern regarding the potential impact on property values but submitted no specific evidence in support of their concerns. (R., Ex. 61 at pages 00389-00394).

83.    Faced with the reality that plaintiff had demonstrated, and its own consultants confirmed, that there were no feasible alternative locations to the Facility at the Public Utility Site, including the Fire Department Property, the Planning Board raised the new issue of whether the use of a distributed antenna system ("DAS"), an alternative technology, was a feasible alternative to the proposed Facility at the Public Utility Site. (R., Ex. 61 at pages 00389-00394).

84.    The issue of DAS was raised for the first time at the November 27, 2007 public hearing despite the fact that the Application had been filed more than 19 months prior.

85.    In response to the Planning Board's inquiry, at the November 27, 2007, Planning Board public hearing, Rich Conroy, President of PierCon

20

Solutions, plaintiff's RF consultant testified that DAS is not a feasible alternative to the proposed Facility at the Public Utility Site. (R., Ex. 61 at pages 00389-00394).

86.    Nevertheless, the Planning Board refused to close the public hearing and directed the CDRC to retain a consultant to review the feasibility of utilizing DAS as an alternative to the proposed Facility. (R., Ex. 61 at pages 00389-00394).

87.    In response to the unsubstantiated concerns raised by residents at the November 27, 2007 public hearing, by letter dated December 4, 2007, plaintiff submitted to the Planning Board a comparative sales analysis prepared by Lane Appraisals, Inc., dated October 13, 2006, which concludes that the "Facility will not result in the diminution of property values or reduce the marketability of properties in the immediate area." (R., Ex. 63B at pages 00413-00426).

88.    Immediately prior to the adjourned Planning Board public hearing on December 11, 2007, Alan Simon, the Director of Building, Planning and Zoning, provided plaintiff's counsel with a letter from the Fire Department, dated December 6, 2007, once again indicating the Fire Department's interest in a lease agreement with plaintiff.

89.    At the Planning Board public hearing on December 11, 2007, the Planning Board once again raised the issue of the Fire Department Property as an alternative. This issue was raised yet again in spite of the written documentation submitted by plaintiff and confirmed by the Town's own RF consultant that the Fire Department Property is not a feasible alternative to the Facility at the Site.

21

90.     Although the December 6, 2007 Fire Department letter did not specify a location, this time Mr. Simon suggested that the Fire Department was interested in leasing a different parcel of property known as Fireman's Park to plaintiff as an alternative to the proposed Site. Mr. Simon requested that plaintiff review the feasibility of locating the Facility at Fireman's Park. (R., Ex. 67 at pages 00432-00435).

91.     The Planning Board refused to close the public hearing at the December 11, 2007 Planning Board meeting since the CDRC had not yet obtained a report from RCC regarding the feasibility of DAS and adjourned the public hearing until January 8, 2008. The Planning Board assured plaintiff that RCC's DAS report would be completed by the end of the year so that plaintiff would have ample time to prepare a response in advance of the January 8, 2008 continued public hearing. (R., Ex. 67 at pages 00432-00435).

92.     Despite the fact that RCC's DAS report was forwarded to the Town Planner by e-mail on December 28, 2007, it was not provided to plaintiff until January 4, 2008, a mere four (4) days before the January 8, 2008 continued public hearing.

93.     RCC's DAS report incorrectly concluded that DAS was a feasible alternative to the Facility at the Site.

94.     By letter dated January 8, 2008 plaintiff submitted a letter from PierCon confirming that the Fire Department's property at Fireman's Park is

22

not a feasible alternative to the Facility at the Public Utility Site. (R., Ex. 70A at pages 00459-00460).

95.    In addition, plaintiff submitted a letter from PierCon dated January 7, 2008 that highlighted several of the technical and logistical issues challenging the merits of RCC's conclusions in its December 28, 2007 DAS report. (R., Ex. 70C at pages 00463-00466).

96.    At the public hearing on January 8, 2008, Mr. Conroy testified as to the flaws contained in RCC's DAS report. (R., Ex. 71 at pages 00467-00469; R., Ex. 72 at pages 00470-00544).

97.    Due to the delay in receiving RCC's DAS report, the Planning Board adjourned the public hearing yet again so that it could have time to review the reports from RCC and PierCon, and so that RCC could respond to the arguments raised by PierCon. (R., Ex. 71 at pages 00467-00469; R., Ex. 72 at pages 00470-00544).

98.    At the conclusion of the meeting one of the members of the public submitted a letter in opposition to the Facility along with portions of the Beckmann Appraisal.

99.    On January 22, 2008, RCC issued a revised DAS report which "wholly replaces the original report."  The revised RCC report concludes "that an outdoor DAS solution for the Town of Ramapo is an impractical and unfeasible solution for the application under consideration." (R., Ex. 77 at pages 00558-00578).

100.    At the continued public hearing on February 19, 2008, one

23

member of the public spoke in opposition to the Facility on the basis of environmental racism and unsubstantiated concerns regarding property values. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

101. With the issue of DAS concluded, the Planning Board then closed the public hearing and made a motion to approve plaintiff's application for a special permit. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

102. The motion to approve the Application failed with two Planning Board members voting in favor of the motion and four Planning Board members voting against the motion. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

103. The Planning Board members then engaged in a discussion amongst themselves and staff in an attempt to formulate a reason to deny the Application. Their discussion focused on the issue of property values and the character of the neighborhood. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

104. Unable to formulate a reason to deny the Application, the Planning Board indicated its intention to reserve decision on the application. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

105. It was apparent from the Planning Board's failure to pass the motion to approve by a vote of two in favor of the motion and four against the motion, that the Planning Board has no intention of approving the Application.

106.    At the request of plaintiff, the Planning Board re-opened the public hearing to allow plaintiff to submit a letter from Lane Appraisals, dated February 14, 2008 in rebuttal to the so called property value study submitted by the neighbors after the conclusion of the previous Planning Board meeting.    The February 14, 2008 letter from Lane Appraisals was substantially the same as the letter from Lane Appraisals dated March 30, 2007 previously submitted to the Zoning Board in connection with plaintiff's application for variances and did not contain any new information. (R., Ex. 79 at pages 00582-00584, R., Ex. 80 at pages 00585-00633), R., Ex. 81 at pages 00634-00641).

107.    The one neighbor who spoke in opposition to the Application earlier that evening then indicated that if the Planning Board wanted, the neighbors could retain Mr. Beckmann to prepare a property value appraisal. (R., Ex. 80 at pages 00585-00633), R., Ex. 81 at pages 00634-00641).

108.    Despite plaintiff's objections, the Planning Board refused to close the public hearing and instead adjourned the public hearing to March 11, 2007 to allow the neighbors to retain Mr. Beckmann to prepare a new appraisal. (R., Ex. 80 at pages 00585-00633; R., Ex. 81 at pages 00634-00641).

109.    The neighbors had more than ample time to retain their own appraiser during the 22 month review of the Application and had not done so.

110.    Over the course of the 22 month review of the Application, each time plaintiff resolved an issue raised by the Planning Board or the neighbors, the Planning Board continuously raised new irrelevant issues and requested

additional information in an effort to unreasonably delay the application and avoid making a decision in the face of strident community opposition.

111.    On March 10, 2008, plaintiff commenced this action alleging that defendant Planning Board unreasonably delayed and effectively denied the Application in violation of the federal Telecommunications Act of 1996.

112.    On March 11, 2008, plaintiff attended a continued public hearing before the defendant Planning Board.

113.    Just prior to the commencement of the public hearing, counsel for the Planning Board provided plaintiff's counsel with a copy of a letter submitted by one of the neighbors in opposition to the Application on March 10, 2008 which included a mere opinion letter from an appraiser based on a study conducted in New Zealand.

114.    The residents never submitted an "appraisal" or "paired sales analysis" demonstrating that the Facility will have a negative impact on property values.

115.    At the conclusion of the March 11, 2008 Planning Board meeting, defendant Planning Board closed the public hearing and denied the Application.

116.    Defendant Planning Board's denial of the Application was based on the unsupported generalized statement of Planning Board Member Brendel Logan that the Facility is a "health risk", an "eyesore" and will "lower property values."

117.    Defendant Planning Board's denial of the Application fails to include any statement of findings or any legal justification for the denial.

118.    Defendant Planning Board's denial of the Application was not filed with the Town of Ramapo Town Clerk within five (5) days of when it was rendered as required by New York State Town Law § 274-b(6).

119.    The administrative Record does not include a written denial. (R., Ex. 1-86 at pages 00001-00683).

120.    Plaintiff's submissions, the written memoranda from the Town Planner, RCC's revised report, the Planning Board's Negative Declaration and the Zoning Board's approval of the variances wholly supported approval of the Facility.

121.    The Planning Board's denial of the Facility did not cite any evidence in the Record that would support the denial of Plaintiff's application.

122.    There is no evidence in the Record, let alone substantial evidence, to support the denial of the Facility.

123.    The defendant Planning Board's denial of plaintiff's application is unsupported by substantial evidence and violates Section 332(c)(7)(B)(iii) of the TCA.

124.    Moreover, as confirmed by the Negative Declaration adopted by the Planning Board, "no other location could provide the coverage required."(R., Ex. 37 at pages 00311-00312). Therefore, the Planning Board's denial of the

application results in a prohibition of service in violation of Section 332(c)(7)(B)(i)(II) of the TCA.

       125.    In sum, based upon the undisputed facts set forth in the stipulated administrative Record and the accompanying Rule 56.1 Statement, it is respectfully submitted that there is no genuine issue to be tried. As such, this Court should grant plaintiff's motion for summary judgment pursuant to FRCP 56(a), declare unlawful defendant Planning Board's delay and ultimate denial of plaintiff's application, compel defendants and their agents to issue a special permit and site development plan approval and any other zoning approvals required for plaintiff's proposed Facility, compel defendants and their agents to issue any other required approval and/or permits, including, but not limited to, a building permit by the Building Inspector, and grant plaintiff such other, further and different relief as the Court may deem just and proper.

Robert D. Gaudioso (RG 3829)
Snyder & Snyder, LLP
94 White Plains Road
Tarrytown, NY 10591
(914) 333-0700

Sworn to before me this
14th day of August, 2008

Notary Public

CARA M. BONOMOLO
Notary Public, State Of New York
No. 02BO6059058
Qualified In Rockland County
Commission Expires ~~May 21,~~ 20 11
Aug. 19,

Z:\SSDATA\WPDATA\SS3\RDG\voicestream\Ramapo\06-615\Litigation\Affidavit in Support of SJ Motion - Final.doc

*Exhibit A*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**OMNIPOINT COMMUNICATIONS, INC.,**
**OMNIPOINT NY MTA LICENSE, LLC,**
**and T-MOBILE LICENSE LLC,**

Plaintiffs,

-against-

**THE TOWN OF RAMAPO,** THE TOWN
OF RAMAPO PLANNING BOARD,
PLANNING BOARD CHAIRMAN
SYLVAIN KLEIN, BRACHA GOBIOFF,
BRENDEL LOGAN, REV. WALTER
BRIGHTMAN, JR., JOHN BRUNSON,
RICHARD STONE, DORA GREENE, in
their official capacities, constituting the
Town Planning Board, THE TOWN OF
RAMAPO TOWN BOARD and LIBORIO
DERARIO in his official capacity as
Director of Building Administration and
Code Enforcement,

Defendants.

**FIRST AMENDED COMPLAINT**

**08 CV. 2419 (SCR)**
**ECF CASE**

## COMPLAINT

Plaintiffs, Omnipoint Communications, Inc., Omnipoint NY MTA License, LLC, and T-Mobile License LLC (hereinafter collectively referred to as the "plaintiff"), by their undersigned counsel, Snyder & Snyder, LLP, complaining of defendants, do allege as follows:

## PRELIMINARY STATEMENT

1.     This action is brought under the federal Telecommunications Act of 1996.  Plaintiff seeks to declare unlawful the unreasonable delay and

effective denial of plaintiff's special permit and site development plan application (the "Application") to install a wireless telecommunications facility (the "Facility").

2.  The Facility consists of a one hundred (100') foot monopole, using stealth technology designed to resemble a tree, with six (6) small panel antennas camouflaged with tree branches mounted thereon, together with related equipment cabinets at the base thereof, located at an Orange and Rockland Utilities, Inc. ("O&R") gas substation on Eckerson Lane, Spring Valley, Town of Ramapo, New York (the "Site").

3.  Plaintiff's application for the Facility was filed with defendant Planning Board more than 22 months ago, on April 17, 2006, and to date, no decision has been rendered regarding same. Instead, in an effort to avoid making a decision on the Application, defendants have subjected plaintiff to a series of unreasonable requests for irrelevant and duplicative information and an unending quest for alternative sites and technologies.

4.  Plaintiff is licensed by the Federal Communications Commission (the "FCC") to provide personal communication services throughout New York, including the Town of Ramapo.

5.  Defendants have unreasonably delayed plaintiff's Application for the Facility over the course of more than 22 months through various delay

2

tactics, designed to keep plaintiff tied up in the hearing process, and thus resulting in the effective denial of plaintiff's Application.

6.   The actions complained of constitute a denial of the rights secured to plaintiff under the federal Telecommunications Act of 1996 (Public Law 104-104, 110 Stat. 56), and Article 78 of the New York State Code of Civil Practice Law and Rules.

7.   Plaintiff seeks permanent injunctive relief and a writ of mandamus compelling defendants to immediately issue all permits and approvals required by the Town of Ramapo for plaintiff to install the Facility that is the subject of this action.

## JURISDICTION AND VENUE

8.   This action is brought under 47 U.S.C. §332(c)(7)(B)(v), which authorizes expedited judicial review of actions brought under §332(c)(7)(B)(v) of the Telecommunications Act of 1996 (the "TCA").

9.   Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1343 and §1331 because this is a civil action that presents federal questions arising under the TCA. This Court has supplemental jurisdiction over any and all New York State Law claims pursuant to 28 U.S.C. §1367.

10.   Venue is proper in this district under the provisions of 28 U.S.C. §1391(a).

3

## THE PARTIES

11.    Plaintiff, Omnipoint Communications, Inc. is a wholly owned subsidiary of T-Mobile USA, Inc.  Both Omnipoint Communications, Inc. and T-Mobile USA, Inc. are Delaware corporations with their principal places of business in Bellevue, WA.  Omnipoint Communications, Inc. has offices located at 4 Sylvan Way, Parsippany, New Jersey 07054.  Both Omnipoint Communications, Inc. and T-Mobile USA, Inc. are duly authorized to conduct business in the State of New York.

12.    Plaintiff, Omnipoint NY MTA License, LLC, a wholly owned subsidiary of Omnipoint Communications, Inc., is a Delaware limited liability company with its principal place of business in Bellevue, WA.

13.    Plaintiff, T-Mobile License LLC is a wholly owned subsidiary of T-Mobile USA, Inc. T-Mobile License LLC is a Delaware limited liability company with its principal place of business in Bellevue, WA.

14.    Omnipoint Communications, Inc. constructs, maintains and operates personal wireless service facilities and, pursuant to FCC PCS licenses held by Omnipoint NY MTA License, LLC and T-Mobile License LLC, provides wireless services in the New York metropolitan trading area.  Plaintiff markets wireless services to and is known to its customers under the national entity brand name "T-Mobile." T-Mobile USA, Inc. operates a national wireless network.

4

15.  Plaintiff provides a public utility service known as "commercial mobile radio service" (also referred to as "personal wireless service"), as those terms are defined under 47 U.S.C. §332(d)(1) and 47 U.S.C. §332(c)(7)(C)(i).

16.  Plaintiff has been authorized by the FCC to construct and operate a digital, mobile radio system in various parts of the United States, including the State of New York, and the Town of Ramapo.

17.  Defendant, Town of Ramapo Planning Board is an administrative body authorized by the laws of the State of New York and the Zoning Code of the Town of Ramapo, to *inter alia*, grant a special permit and site plan approval for the type of installation proposed by plaintiff.

18.  Defendants, Town of Ramapo and the Town of Ramapo Town Board, respectively, are a municipal corporation and its governing body, created under the laws of the State of New York, and each having an address at 237 Route 59, Suffern, New York 10901. The Town Board empowered the Planning Board to grant a special permit and site plan approval for the construction and installation of antennas and related telecommunications facilities, such as those proposed by plaintiff.

19.  Defendant, Liborio Derario, is the Town of Ramapo Director of Building Administration and Code Enforcement.  The Director of Building Administration and Code Enforcement is charged with the duty of issuing building permits.

5

## FACTS COMMON TO ALL COUNTS

20.  Plaintiff is authorized by the FCC to construct and operate a mobile radio service using personal communications services ("PCS Service"). PCS Service competes with both traditional landline telephone services, and other mobile communication providers. Plaintiff's customers communicate using handsets that rely on a network of wireless base station facilities, or cell sites (comprised of antennas, equipment cabinets and related equipment), constructed and operated by plaintiff.

21.  The provision of PCS Service is only possible through a carefully designed network of cell sites, whose locations depend on natural and manmade features in the environment. Only through careful network siting is it possible to establish a seamless and reliable communications grid.

22.  To provide the service plaintiff is licensed to provide, its network must be capable of "handing off" radio signals to other wireless facilities in plaintiff's system as a mobile customer moves across an area.

23.  Where a gap in service exists, as it does in the Town of Ramapo, plaintiff's customers, who may include the traveling public, as well as police, fire and emergency response agencies are unable to initiate, receive or maintain calls.

24.  In the Town of Ramapo, plaintiff's customers experience a significant gap in wireless services. Plaintiff has been diligently trying to fill this gap in service. Plaintiff conducted studies to identify new antenna sites that would close this gap.

25.  Consistent with the foregoing, and prompted by a need to close an existing significant gap in service, plaintiff confirmed that collocation and use of existing structures was not feasible and identified the Site as the most appropriate location to construct the Facility since it is currently utilized as a public utility gas substation.

## THE APPLICATION

26.  On April 17, 2006, plaintiff filed an application (the "Application") for special permit and site development plan approval with the Planning Board, as required by the Town of Ramapo Zoning Code for the construction of the Facility.

27.  The Facility also required the issuance of four (4) setback variances that were granted by the Town of Ramapo Zoning Board of Appeals on April 12, 2007.

28.  In granting the necessary setback variances, the Zoning Board of Appeals found that: (1) "an undesirable change will not be produced in the character of the neighborhood nor a detriment to nearby properties will be created by the granting of the area variances;" and (2) "the

7

proposed variance will not have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district."

29.     The Application demonstrated that the Facility met the requirements of the Town of Ramapo Zoning Code and the Town of Ramapo Planning Board Site Development Plan Rules and Regulations for site plan approval, as required to install the Facility at the Site.

30.     The Facility complies with the height requirements of the Town of Ramapo Zoning Code.

31.     Plaintiff appeared at Planning Board public hearings on July 11, 2006, September 12, 2006, October 17, 2006, November 27, 2007, December 11, 2007, January 8, 2008 and February 19, 2008, technical review meetings on June 7, 2006, October 12, 2006, July 18, 2007, and October 10, 2007, and Zoning Board of Appeals public hearings on January 4, 2007, February 8, 2007, March 1, 2007, March 15, 2007 and April 12, 2007.

32.     During the public hearings, numerous residents spoke in general terms against the Facility. These expressions of concern were based primarily on perceived fears of adverse health effects from radio frequency emissions, and generalized concerns regarding aesthetics and property values.

33.     The Town Board itself has evidenced hostility toward wireless facilities. Indeed on March 30, 2005, the Town Board enacted and then

8

extended a moratorium ("Moratorium") on wireless facilities. The Moratorium was in effect for nine (9) months. The stated purpose of the Moratorium was to enact changes to the Town's zoning and land use procedure for wireless facilities.

34.    During the pendency of the Moratorium, plaintiff applied for and the defendant Town Board denied plaintiff's application for a waiver from the terms of the Moratorium.

35.    The Moratorium expired more than two years ago, in January 2006, and no changes to the Town Zoning Code have even been proposed for wireless facilities.

36.    The Application establishes that the Facility would have no significant adverse environmental, aesthetic or other impacts on the surrounding community.

37.    In connection with the Application, on October 17, 2006, defendant Planning Board adopted a negative declaration pursuant to the New York State Environmental Quality Review Act finding that the Facility will not have a significant adverse impact on the environment.

38.    In support of the negative declaration, the Planning Board found that: (1) "the applicant has selected a site that is a current utility site which is well screened from the surrounding neighborhood;" (2) "the visual analysis shows that the location will be minimally noticed during the leaf on seasons;" (3) "the evergreen antenna will help mitigate visual

9

impacts for leaf off times;" and (4) "this site provides the best option for closing the coverage gap."

39.   The Town's planning consultant, John Lange, F. P. Clark Associates Inc. ("Town Planner"), confirmed the Facility's lack of adverse impacts in a memorandum dated June 5, 2006, which stated that: (1) the Facility "is reasonably separated from the surrounding residences"; (2) that the visual "impacts to the sites depicted are not severe"; and (3) "the physical impact of the proposed action will be negligible as the wireless equipment will be located on an existing utility site."

40.   In a June 27, 2007 memorandum the Town Planner also advised that "[s]ince the Zoning Board of Appeals has granted the variances required, and since the height of the tower has been reduced to the maximum allowable height and since all of the other concerns have been mitigated, this is ready for final site plan approval."

41.   Nevertheless, for a period of six (6) months, from May 2007 to November 2007, the Planning Board, without reason, refused to place the Application on the Planning Board's agenda for a continued public hearing.

42.   The application submissions demonstrated that the Facility is necessary to remedy a significant gap in plaintiff's reliable service in the vicinity of the Site.

10

43.     The Town of Ramapo Zoning Code requires an applicant for a wireless communications facility to demonstrate that it is not feasible to locate the Facility on an existing site on the Town's Existing Facilities Inventory.

44.     The application submissions demonstrated that it is not feasible to locate the Facility on an existing site on the Town's Existing Facilities Inventory.

45.     The Town of Ramapo Zoning Code requires that where location on a site with existing facilities is not possible, such facility shall be located on a site with existing commercial or nonresidential uses.

46.     In compliance with the Town of Ramapo Zoning Code, the Facility is proposed to be located on a site that is currently used as a public utility gas substation, a nonresidential use.

47.     Over the course of the Planning Board's review, the Planning Board required plaintiff to review the feasibility of locating the facility at seven alternative locations, including a location at the Hillcrest Fire Department.

48.     Plaintiff submitted documentary evidence that each location was not a feasible alternative to the proposed Facility at the Site.

49.     The Town Planner confirmed that plaintiff "provided sufficient information on alternative locations to support their contention that the proposed site is one that meets their coverage requirements with the

11

least impact upon the environment" in a memorandum to the Deputy Town Attorney for Planning and Zoning, dated October 13, 2006.

50.    In addition, the Town's radio frequency consultant, RCC Consultants, Inc. ("RCC"), confirmed that the Hillcrest Fire Department property is not a feasible alternative to the Facility at the Site.

51.    Faced with the reality that plaintiff had demonstrated, and its own consultants confirmed, that there were no feasible alternative locations to the Facility at the Site, the Planning Board then raised the new issue of whether the use of a distributed antenna system ("DAS") was a feasible alternative to the proposed Facility at the Site.

52.    The issue of DAS was raised for the first time at the November 27, 2007 public hearing despite the fact that the Application had been filed more than 19 months prior.

53.    In response to the Planning Board's inquiry, at the November 27, 2007, Rich Conroy, President of PierCon Solutions, plaintiff's radio frequency consultant testified that DAS is not a feasible alternative to the proposed Facility at the Site.

54.    Local governments are preempted from regulating the business activities of wireless providers. Local governments cannot restrict federally licensed wireless service providers from exercising their federal wireless licenses by requiring FCC licensees to execute franchise agreements, pole attachment agreements, agreements with

12

third party Outdoor DAS providers and accept limitations on frequency emissions as conditions precedent to the exercise of federal licenses. The Planning Board exceeded its jurisdiction.

55.   Nevertheless, at its meeting on November 27, 2007, the Planning Board refused to close the public hearing and directed its staff to retain a consultant to review the feasibility of utilizing DAS as an alternative to the proposed Facility.

56.   Nearly two months later, the Town's radio frequency consultant, RCC concluded "that an outdoor DAS solution for the Town of Ramapo is an impractical and unfeasible solution for the application under consideration."

57.   The Application demonstrates that the Facility will not have an adverse impact on property values in the surrounding area.

58.   There is no substantial evidence in the record that the Facility will have an adverse impact on property values.

59.   By letter dated December 4, 2007, plaintiff submitted to the Planning Board a comparative sales analysis prepared by Edward J. Ferrarone, MAI, President of Lane Appraisals, Inc., which concludes that the "Facility will not result in the diminution of property values or reduce the marketability of properties in the immediate area."

60.   Nevertheless, at the last Planning Board public hearing on February 18, 2008, the Planning Board refused to close the public hearing and

13

instead adjourned the public hearing to March 11, 2007 to allow the neighbors to obtain a property value appraisal.

61.    The neighbors had more than ample time to retain their own appraiser during the 22 month review of the Application and had not done so.

62.    At the last Planning Board meeting on February 18, 2008, the Planning Board made a motion to approve plaintiff's application for a special permit.

63.    The motion to approve the Application failed with two (2) Planning Board members voting in favor of the motion and four (4) Planning Board members voting against the motion.

64.    The Planning Board's failure to adopt the motion to approve the Application is deemed a denial of the Application.

65.    The Planning Board was then unable to formulate a reason to deny the Application.

66.    It was apparent from the Planning Board's failure to pass the motion to approve by a vote of two (2) in favor of the motion and four (4) against the motion, that the Planning Board has no intention of approving the Application.

67.    Over the course of the 22 month review of the Application, each time plaintiff resolved an issue raised by the Planning Board or the neighbors, the Planning Board continuously raised new irrelevant issues and requested additional information in an effort to

14

unreasonably delay the application and avoid making a decision in the face of strident community opposition.

68. Taken as a whole, the record before the Planning Board demonstrates that plaintiff has met the requirements for a special permit and site plan approval.

69. There is no evidence in the record before the Planning Board that the Facility would have an adverse impact on the community.

70. The administrative record demonstrates that plaintiff has a significant gap in coverage and that the Facility at the Site is the least intrusive means of remedying such gap.

71. The failure by the Planning Board to close the public hearing and render a favorable decision on the Application, despite the overwhelming evidence in the record supporting such action, as well as the continuous requests by defendants and their consultants for irrelevant information and the unending search for alternatives, constitutes an unreasonable delay of the Application, tantamount to a denial of same, in violation of §332(c) of the federal TCA.

72. No matter what the plaintiff does in this case, the Planning Board will never deem it sufficient to approve the Application.

73. A special permit is a use permitted by right provided the application meets all of the conditions of the zoning code.

15

74.   The administrative record is devoid of any evidence; let alone substantial evidence, sufficient to deny the Application based on a condition contained in the Zoning Code.

75.   There is no way to measure the loss of market share and customer goodwill the plaintiff continues to suffer as a result of the gaps in coverage which continue to exist in the Town and surrounding areas.

76.   Since there is no less intrusive means of remedying plaintiff's significant gap in coverage, any denial of the Application is a prohibition of service.

77.   The Planning Board made evident, by its failure to adopt the motion to approve the Application, that it does not intend to approve the Application. Therefore, any further proceedings before the Planning Board would be futile.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

78.   Plaintiff repeats and realleges paragraphs 1 through 77 of the Complaint as though set forth in full herein.

79.   Section 332(c)(7)(B)(ii) of the TCA, provides that "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly

16

filed with such government or instrumentality, taking into account the nature and scope of such request."

80.    The failure of the defendant Planning Board to close the public hearing and render a decision regarding the Application after a 22 month review, coupled with the nine (9) month Moratorium and Town Board denial of plaintiff's waiver application, and the repeated requests for irrelevant information, constitute an unreasonable delay of the Application, in violation of §332(c)(7)(B)(ii) of the TCA.

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

81.    Plaintiff repeats and realleges paragraphs 1 through 80 of the Complaint as though set forth in full herein.

82.    Section 332(c)(7)(B)(iii) of the TCA, provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

83.    By unreasonably delaying the Application, defendants have effectively denied the Application.

84.    The denial and effective denial of the Application is not based on substantial evidence and is violative of the rights secured to plaintiff under 47 U.S.C. §332(c)(7)(B)(iii).

17

85.     As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including site plan approval and a building permit for the Facility.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

86.     Plaintiff repeats and realleges paragraphs 1 through 85 of the Complaint as though set forth in full herein.

87.     Section 332(c)(7)(B)(i)(II) of the TCA, provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof -- . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

88.     By unreasonably delaying and effectively denying the Application, defendants have effectively prohibited the provision of personal wireless service in violation of Section 332(c)(7)(B)(i)(II), since plaintiff has demonstrated a significant gap in service and there is no less intrusive means of remedying such gap.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

89.     Plaintiff repeats and realleges paragraphs 1 through 88 of the Complaint as though set forth in full herein.

18

90.    Section 332(c)(7)(B)(iv) of the TCA provides that: "No State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).The Planning Board's unreasonably delay and effective denial of the Application was based on unsubstantiated generalized community concerns regarding perceived health effects from radio frequency emissions from the Facility, in violation of §332(c)(7)(B)(iv) of the TCA.

91.    As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including a special permit, site development plan approval and a building permit.

## AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS UNDER NEW YORK LAW

92.    Plaintiff repeats and realleges paragraphs 1 through 91 of the Complaint as though set forth in full herein.

93.    There is substantial evidence in the written record before the defendants that supports the issuance of the requested special permit and site plan approval under the Town of Ramapo Zoning Code, and

19

the Town of Ramapo Planning Board Site Development Plan Rules and Regulations for site plan approval.

94.    The Planning Board's effective denial of plaintiff's application was arbitrary and capricious and in violation of the New York State Law and the Town of Ramapo Zoning Code.

95.    As such, plaintiff is entitled to a judgment and order compelling defendants and their agents to issue all necessary permits and approvals, including site plan approval and a building permit.

**WHEREFORE**, the plaintiff respectfully demands judgment of this Court on all of its Claims for Relief and a judgment and order which:

(1)    declares unlawful defendant Planning Board's unreasonable delay and effective denial of plaintiff's application;

(2)    compels defendants and their agents to issue a special permit and site plan approval and any other zoning approvals required for plaintiff to construct operate and maintain the Facility; and

(3)    compels defendants and their agents to issue any other required approval and/or permits, including, but not limited to, a building permit

20

by the Building Inspector, to construct operate

and maintain the Facility; and

(4)    grants plaintiff such other, further and different

relief as the Court may deem just and proper.


Robert D. Gaudioso (ID #RG 3829)
Snyder & Snyder, LLP
94 White Plains Road
Tarrytown, NY 10591
(914) 333-0700


Dated: March 31, 2008
       Tarrytown, New York 10591

Z:\SSDATA\WPDATA\SS3\RDG\voicestream\Ramapo\06-615\Litigation\Amended Complaint.doc

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**OMNIPOINT COMMUNICATIONS, INC.,**
**OMNIPOINT NY MTA LICENSE, LLC,**
**and T-MOBILE LICENSE LLC,**

                        Plaintiffs,

            -against-

**THE TOWN OF RAMAPO,** THE TOWN
OF RAMAPO PLANNING BOARD,
PLANNING BOARD CHAIRMAN
SYLVAIN KLEIN, BRACHA GOBIOFF,
BRENDEL LOGAN, REV. WALTER
BRIGHTMAN, JR., JOHN BRUNSON,
RICHARD STONE, DORA GREENE, in
their official capacities, constituting the
Town Planning Board, THE TOWN OF
RAMAPO TOWN BOARD and LIBORIO
DERARIO in his official capacity as
Director of Building Administration and
Code Enforcement,

                        Defendants.

---

**FIRST SUPPLEMENTAL**
**COMPLAINT**

**08 CV. 2419 (SCR)**
**ECF CASE**

Leave having been granted, plaintiffs, Omnipoint Communications, Inc.,

Omnipoint NY MTA License, LLC, and T-Mobile License LLC (hereinafter

collectively referred to as the "plaintiff"), by their undersigned counsel, Snyder &

Snyder, LLP, bring this supplemental complaint against defendants, alleging as

follows:

1.       Plaintiff commenced this action on March 10, 2008 seeking to declare

         unlawful the unreasonable delay and effective denial of plaintiff's

special permit and site development plan application (the "Application") to install a wireless telecommunications facility (the "Facility").

2.    On March 11, 2008, defendant Planning Board denied the Application.

3.    Plaintiff now supplements its complaint to seek to declare unlawful the defendant Planning Board's unsupported denial of the Application.

4.    Plaintiff incorporates by reference each and every allegation contained in the First Amended Complaint as if it were more fully set forth herein.

5.    Defendant Planning Board's denial of the Application was based on the unsupported generalized statement of Planning Board Member Brendel Logan that the Facility is a "health risk", an "eyesore" and will "lower property values."

6.    The Facility will comply with the Federal Communications Commission's regulations concerning radio frequency emissions.

7.    The defendant Planning Board's denial of the Application is not supported by substantial evidence in the written record.

8.    Since there is no less intrusive means of remedying plaintiff's significant gap in coverage, the denial of the Application is a prohibition of service.

9.    Defendant Planning Board's denial of the Application was arbitrary and capricious.

2

10.    Defendant Planning Board's denial of the Application was not in writing.

11.    Defendant Planning Board's denial of the Application fails to include any statement of findings or any legal justification for the denial.

12.    On April 11, 2008, plaintiff's attorneys spoke with Michelle Lowy at the Town of Ramapo Town Clerk's office and was informed that a decision on the Application has not been filed with the Town Clerk's office.

13.    Defendant Planning Board's denial of the Application was not filed with the Town of Ramapo Town Clerk within five (5) days of when it was rendered in accordance with New York State Town Law § 274-b(6).

14.    The actions complained of constitute a denial of the rights secured to plaintiff under the federal Telecommunications Act of 1996 (Public Law 104-104, 110 Stat. 56), and Article 78 of the New York State Code of Civil Practice Law and Rules.

15.    There is no way to measure the loss of market share and customer goodwill the plaintiff continues to suffer as a result of the significant gaps in coverage which continue to exist in the Town and surrounding areas.

3

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST
## DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

16.    Plaintiff repeats and realleges paragraphs 1 through 15 of this Supplemental Complaint as though set forth in full herein.

17.    Section 332(c)(7)(B)(iii) of the TCA, provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

18.    Defendant Planning Board's denial of the Application is not based on substantial evidence and not "in writing" and is therefore violative of the rights secured to plaintiff under 47 U.S.C. §332(c)(7)(B)(iii).

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST
## DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

19.    Plaintiff repeats and realleges paragraphs 1 through 18 of this Supplemental Complaint as though set forth in full herein.

20.    Section 332(c)(7)(B)(i)(II) of the TCA, provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof -- . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

4

21.     By denying the Application, defendants have effectively prohibited the provision of personal wireless service in violation of Section 332(c)(7)(B)(i)(II), since plaintiff has demonstrated a significant gap in service and there is no less intrusive means of remedying such gap.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS PURSUANT TO SECTION 332(c) OF THE TCA

22.     Plaintiff repeats and realleges paragraphs 1 through 21 of this Supplemental Complaint as though set forth in full herein.

23.     Section 332(c)(7)(B)(iv) of the TCA provides that: "No State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).

24.     Defendant Planning Board's denial of the Application was based on unsubstantiated generalized community concerns regarding perceived health effects from radio frequency emissions from the Facility, in violation of §332(c)(7)(B)(iv) of the TCA.

5

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## AGAINST DEFENDANTS UNDER NEW YORK LAW

25.    Plaintiff repeats and realleges paragraphs 1 through 24 of this Supplemental Complaint as though set forth in full herein.

26.    There is substantial evidence in the written record before the defendants that supports the issuance of the requested special permit and site plan approval under the Town of Ramapo Zoning Code, and the Town of Ramapo Planning Board Site Development Plan Rules and Regulations for site plan approval.

27.    There is no substantial evidence in the written record before the defendants and no rational basis that supports the denial of the Application.

28.    Defendant Planning Board's denial of the Application was arbitrary and capricious and not based on substantial evidence, in violation of the New York State Town Law and the Town of Ramapo Zoning Code, all in violation of Article 78 of the New York State Code of Civil Practice Law and Rules.

**WHEREFORE**, the plaintiff respectfully demands judgment of this Court on all of its Claims for Relief and a judgment and order which:

(1)    declares unlawful defendant Planning Board's denial of plaintiff's application;

6

(2)     compels defendants and their agents to issue a special permit and site plan approval and any other zoning approvals required for plaintiff to construct operate and maintain the Facility; and

(3)     compels defendants and their agents to issue any other required approval and/or permits, including, but not limited to, a building permit by the Building Inspector, to construct operate and maintain the Facility; and

(4)     grants plaintiff such other, further and different relief as the Court may deem just and proper.

Robert D. Gaudioso (ID #RG 3829)
Snyder & Snyder, LLP
94 White Plains Road
Tarrytown, NY 10591
(914) 333-0700

Dated: April 11, 2008
        Tarrytown, New York 10591

Z:\SSDATA\WPDATA\SS3\RDG\voicestream\Ramapo\06-615\Litigation\Supplemental Complaint.doc

7